IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHEILA M. GREEN,                        ]
                                        ]
    Plaintiff;                          ]
                                        ]
vs.                                     ]      2:11-CV-3812-LSC
                                        ]
MICHAEL J. ASTRUE,                      ]
Commissioner of Social Security,        ]
                                        ]
    Defendant.                          ]

MEMORANDUM OF OPINION

I.    Introduction

Plaintiff, Sheila Green, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Income ("SSI"). Ms. Green timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Green was forty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 18, 240.) Her past work experiences include employment as a cleaner. (Tr. at 68.) She claims that she became disabled on June 29, 2007, and adopts on appeal the ALJ's recitation

of her testimony regarding her claim of disability, which is that she suffers from "status-post left ankle fracture with residual joint immobility and gait disturbance, degenerative disc disease of the lumbar spine, diabetes mellitus with peripheral neuropathy and glaucoma." (Tr. at 134.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. (*Id.*) If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. (*Id.*) The decision depends on the medical evidence in the record. See *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an

impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*)

Applying the sequential evaluation process, the ALJ found that Plaintiff met "the insured status requirements of the Social Security Act through December 31, 2011." (Tr. at 15.) He further determined that Plaintiff has not engaged in substantial

gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's "status-post left ankle fracture with residual joint immobility and gait disturbance, degenerative disc disease of the lumbar spine, diabetes mellitus with peripheral neuropathy and glaucoma" are considered "severe" based on the requirements set forth in the regulations. (Tr. at 16.) However, the ALJ found that these impairments neither meet, nor medically equal, any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17.) The ALJ did not find Plaintiff's allegations to be totally credible, and he determined that Plaintiff has the RFC to perform sedentary work with the following additional limitations:

> [S]he is to avoid more than occasional balancing or climbing of stairs or ramps; she is to avoid all commercial driving, stooping, kneeling, crouching, crawling, climbing of ropes, ladders or scaffolds, exposure to unprotected heights or moving machinery, exposure to excessive humidity, wetness, temperature, vibration, or to dust, odors, fumes and gases.

(*Id.*)

The ALJ determined that Ms. Green is unable to perform any past relevant work. (Tr. at 18.) The ALJ noted that Plaintiff was a "younger individual aged 45-49" at the time of the final decision by the ALJ. (*Id.*) The ALJ also noted that Plaintiff has at least a high school education, and is able to communicate in English,

4

as those terms are defined by the regulations. (*Id.*) He determined that transferability of job skills is not material to the determination of disability. (*Id.*) The ALJ then determined that "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as assembly worker, tester/sorter, and sampler/weigher. (Tr. at 18-19.) Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from February 28, 2008, through the date of this decision." (Tr. at 19.)

II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Ms. Green argues that the ALJ's decision should be reversed and remanded because it is not supported by substantial evidence and applicable law for one reason. Specifically, she claims that the ALJ failed to credit her subjective complaints of pain.

Disability benefits may not be paid solely on the basis of a claimant's own self-

serving complaints. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain and other symptoms shall not alone be conclusive evidence of disability.") However, a claimant's subjective testimony of pain and other symptoms will support a finding of disability if it is supported by medical evidence that satisfies the Eleventh Circuit's "pain standard" and if it is not discredited by the ALJ. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). To satisfy the pain standard, a claimant must show "evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that it can reasonably be expected to give rise to the alleged pain." *Id.* at 1560; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the pain standard is satisfied, the ALJ must consider a claimant's subjective testimony of pain and other symptoms. *Foote*, 67 F.3d at 1560; *see also Minter v. Astrue*, 722 F. Supp. 2d 1279, 1282 (N.D. Ala. 2010) (finding that "if a claimant testifies to disabling pain and satisfies the three-part pain standard, he must

7

be found disabled unless that testimony is properly discredited").

If the ALJ discredits the claimant's subjective testimony of pain and other symptoms, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). "Although [the Eleventh Circuit] does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In other words, "particular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

Three separate hearings were held before the ALJ in this matter. At Plaintiff's first hearing on July 7, 2008, Plaintiff testified that she is unable to work because of chronic low back pain and peripheral neuropathy that results in chronic pain in her left leg and foot. (Tr. at 203.) According to Plaintiff, she can only stand for ten minutes at a time and walk less than one block. (Tr. at 203-04.) Plaintiff testified that she has

8

to lie down or recline for four to five hours during the day and that she would miss four to five days of work per month. (Tr. at 204.) Plaintiff further testified that her pain level is a seven out of ten on a daily basis. (Tr. at 206.) At this first hearing, the VE testified that all work would be precluded with the need to recline for four to five hours daily. (Tr. at 211.) The ALJ, unsatisfied with the record at this hearing, ordered a consultative evaluation to be conducted and indicated that a supplemental hearing would follow. (Tr. at 214.)

    A consultative examination was conducted by Dr. Touger on July 29, 2008. (Tr. at 158-66.) After examining the plaintiff, Dr. Touger assessed her with suffering from fibromyalgia, history of left ankle fracture with instrumentation and almost complete immobility of the left ankle joint, type II diabetes, and well-controlled hypertension. (Tr. at 160.) Dr. Touger completed a Medical Source Statement form, in which he checked boxes indicating that Plaintiff could only sit, stand, and/or walk for a total of five hours per work day. (Tr. at 163-68.) When asked what activity the plaintiff could perform for the rest of the three hours in any given work day, he wrote: "lying or sitting in recliner." (Tr. at 160.) In a separate handwritten report, Dr. Touger also opined that Plaintiff does "not have any significant anatomical abnormalities that would explain away her diffuse aches and pains." (*Id.*) While Dr.

Touger conceded that Plaintiff has problems with her left ankle, he stated "but as far as the rest of her problems go, I am at a loss to describe what's going on." (*Id.*) Dr. Touger also noted that some of Plaintiff's complaints were attributable to "secondary gain." (*Id.*)

A supplemental hearing was held on November 20, 2008, at which time the ALJ took additional testimony from the VE and testimony regarding Plaintiff's vision. Still unsatisfied with the record, the ALJ held the record open for additional evidence, including medical records from Cooper Green Hospital regarding Plaintiff's complaints of and treatment for back pain. (Tr. at 234.)

The final hearing was held on August 11, 2009. (Tr. at 237-56.) At this hearing, the VE testified that the limitations as set out by Dr. Touger in his Medical Source Statement form would prevent a hypothetical individual from working a full eight-hour work day for a forty-hour work week, as Dr. Touger opined that the plaintiff could only sustain a five hour work day. (Tr. at 251-53 ("It would preclude her ability to meet the demands of past relevant work or other work as found in our nation's economy due to the inability to sustain an eight hour work day for a 40 hour work week as Dr. Tooger [PHONETIC] has opined that she could only make a five hour work day.")) The ALJ, clearly dissatisfied with the VE's testimony, continued to

question the VE and commented:

> And that's the problem I have with anybody presenting you with a hypothetical . . . that basically says a person could only stand, sit or walk up to a total of five hours . . . I would stipulate that were that to be the case the claimant is disabled. You would have my stipulation on that because I feel if a person can't work eight hours then they're disabled. The issue in this case is whether she can't sit, stand, or walk for eight hours, do any of one of those three and I don't know what the other three hours would be, [Dr. Touger] doesn't say, he just has sit, stand, walk.

(Tr. at 252.)

At that point the plaintiff's attorney pointed out to the ALJ that Dr. Touger had in fact indicated that for the remaining three hours in the workday Plaintiff would have to be lying or sitting in a recliner. (*Id.*) The ALJ then questioned the plaintiff as to whether sitting in a recliner was any different from sitting in a chair, to which the plaintiff responded that sitting in a recliner with her feet elevated makes her back pain more bearable. (Tr. at 254.) The ALJ then indicated that he would take the matter under advisement and issue a decision, and he concluded the hearing. (Tr. at 255.)

In his decision denying SSI dated October 16, 2009, the ALJ impliedly found that Plaintiff satisfied the *Holt* pain standard by concluding that she had an underlying medical condition that could reasonably be expected to produce her pain or other symptoms. *See Foote*, 67 F.3d at 1560. However, the ALJ then set forth several

reasons for discrediting Plaintiff's complaints of back pain, none of which is supported by the record.

      The ALJ first noted that the record is devoid of any medical evidence indicating that Plaintiff must lie down or recline for several hours per day, as Plaintiff alleged. (Tr. at 18.) This factual determination is not supported by the evidence, as Dr. Touger's Medical Source Statement indicates that Plaintiff must lie or sit in a recliner for at least three hours per day. (Tr. at 164.) Second, the ALJ indicated that Plaintiff's description of her limitations is inconsistent with her daily activities, including caring for two disabled relatives. (Tr. at 18.) Specifically, the ALJ stated that Plaintiff "admitted that her daily activities include caring for both her disabled husband and her disabled son." (Tr. at 17.) There is no evidence in the record that Plaintiff "admitted" that she cared for both her disabled son and husband. To the contrary, the questionnaires completed by Plaintiff indicate that she lives with her husband and son and that she depends on them for help with nearly all of her daily activities. (Tr. at 95-107.) Specifically, Plaintiff indicated that her husband has to help her with her personal care including dressing and bathing, and that her son helps her by stirring food in the kitchen, lifting things, shopping, cleaning the house, and doing laundry. (Tr. at 78, 79, 94, 96, 97.) Contrary to the ALJ's finding, the activities

testified to by Plaintiff do not in any way discredit her testimony of disabling pain.

The ALJ also relied heavily on the conclusions of consultative examiner Dr. Touger in discrediting Plaintiff's subjective complaints of pain. Specifically, the ALJ indicated that he gave "the greatest weight to the assessment of Dr. Touger, the consultative examiner, who described a limited range of sedentary work for which the plaintiff was suited." (Tr. at 18.) However, as clearly testified to by the VE at the third hearing, Dr. Touger's assessment does not even allow for sedentary work because he indicated that the plaintiff must lie or sit in a recliner with her feet elevated for three out of the eight hours in a work day. (Tr. at 250.) As such, the ALJ's determination that Dr. Touger's report actually allowed for sedentary work is not supported by the evidence, including expert testimony by the VE.[1]

---

[1] The Commissioner argues on appeal that the ALJ "clearly did not accept" that portion of Dr. Touger's report stating that Plaintiff must recline for three hours per day. (Doc. 10 at 8.) However, nothing in the ALJ's decision indicates if, or why, he rejected that portion of Dr. Touger's report while at the same time giving the greatest weight to Dr. Touger's opinion that Plaintiff could perform sedentary work. The Court acknowledges that, as the fact-finder, the ALJ is entitled to weigh the evidence and ultimately reject portions of a medical source's report as inconsistent with the other evidence of record. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence. . ."); *Wheeler*, 784 F.2d at 1075. However, the Eleventh Circuit has stated that while an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). This Court is of the opinion that the ALJ's failure to reconcile, or at the least acknowledge, the apparent inconsistencies in Dr. Touger's opinion does not allow the Court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*,

In sum, none of the ALJ's reasons for discrediting Ms. Green's subjective pain testimony amounts to substantial evidence in support of his adverse credibility finding. Moreover, Plaintiff has presented emergency and outpatient records from Cooper Green Hospital that support her subjective complaints of back pain. (Tr. at 116-47.) On March 16, 2007, Plaintiff complained of back pain and indicated she had been using her cane for three weeks. (Tr. at 136.) An MRI of Plaintiff's lumbar spine dated April 25, 2007, documented that she suffered from a central disc bulge at L5-S1 with mild mass effect. (Tr. at 116.) An emergency room visit on June 4, 2007, shows that Plaintiff rated her back pain an eight out of ten and that she was diagnosed with sciatica and lumbar herniation. (Tr. at 135.) Plaintiff again presented to the emergency room on June 24, 2007, for chronic low back pain. (Tr. at 132.) Plaintiff was prescribed pain medication, and also underwent physical therapy sessions for back pain. (Tr. at 124-27.) In October 2007, the records indicate that Plaintiff still complained of back pain, which caused her to cease work, and that she only received minimal relief with Lortab and that her pain interfered with her activities of daily living. (Tr. at 123.) Records from April 2008 show Plaintiff's continued back pain with radiation down her right leg, which she described as "burning." (Tr. at 118.)

---

395 F.3d at 1211.

Plaintiff was assessed with low back pain with disc bulge and likely diabetic neuropathy. (Tr. at 118.) On February 6, 2009, Plaintiff was prescribed a cane, Lortab 7.5 mg, and Flexeril, and it was indicated that this was for "severe" pain. (Tr. at 113.) It was also recommended that she seek treatment at a pain clinic, which also indicates that the treating physician believed she was in severe pain. (Tr. at 181.)

The medical evidence shows that there is a determinable back impairment that could have caused Ms. Green's lower back pain. There is no evidence that this impairment does not exist. None of the ALJ's reasons for discrediting Ms. Green's subjective pain testimony amounts to substantial evidence in support of his adverse credibility finding. The ALJ's determination that Plaintiff cared for her disabled son and husband is not supported by the evidence, nor is his assertion that no medical evidence supported Plaintiff's claim that she must recline for several hours per day. The ALJ's decision to give "the greatest weight" to Dr. Touger's opinions in making his credibility determination is also flawed, as the VE testified that the plaintiff's limitations as outlined by Dr. Touger mean that the plaintiff is incapable of working a full eight-hour work day, even in a sedentary setting. Moreover, Plaintiff has provided extensive medical records from Cooper Green Hospital showing her complaints of, and treatment for, severe back pain. If anything, the medical evidence

in the record provides an independent basis for accepting Plaintiff's claims about her back pain. At any rate, because none of the ALJ's reasons for discrediting Plaintiff's pain testimony amounts to substantial evidence supporting his decision to reject that testimony, the Court must remand this case so that the ALJ can reassess the effect of Plaintiff's claimed back pain after either accepting her testimony or by articulating an adequate reason to reject it.

IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Green's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence. For the foregoing reasons, the ALJ's denial of benefits is vacated, and the case is remanded to the ALJ for further proceedings consistent with this opinion. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 7th day of January 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]